1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

| | |
|---|---|
| ANDERSON DURHAM,<br><br>                              Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE. Commissioner of<br>Social Security,<br><br>                              Defendant. | Case No. 3:11-cv-05925-KLS<br><br>ORDER AFFIRMING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

12
13
14
15
16
17
18

        Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny

benefits should be affirmed.

19

                    FACTUAL AND PROCEDURAL HISTORY

20
21
22
23
24
25
26

        On June 4, 2008, plaintiff filed an application for disability benefits, alleging disability as

of May 15, 1992, due to liver cancer, back problems and posttraumatic stress disorder ("PTSD").

See Administrative Record ("AR") 17, 181.  That application was denied upon initial

administrative review on July 18, 2008, and on reconsideration on March 25, 2009. See AR 17.

A hearing was held before an administrative law judge ("ALJ") on August 31, 2010 at which

plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational

ORDER - 1

expert. <u>See</u> AR 30-59.

On January 26, 2011, the ALJ issued a decision in which plaintiff was determined to be not disabled. <u>See</u> AR 17-25.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 12, 2011, making the ALJ's decision defendant's final decision. <u>See</u> AR 1; <u>see also</u> 20 C.F.R. § 404.981.  On November 10, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. <u>See</u> ECF #1.  The administrative record was filed with the Court on January 25, 2012. <u>See</u> ECF #9.  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in failing to find his PTSD, bowel urgency and degenerative disc disease of the lumbar spine to be severe impairments; (2) in failing to find his PTSD met or medically equaled the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06 ("Listing 12.06"); (3) in assessing his residual functional capacity; and  (4) in finding him to be capable of returning to his past relevant work. For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that defendant's decision should be affirmed.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. <u>See</u> <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>See</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767

ORDER - 2

F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision.  See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that his disability existed on or before" the date his insured status expired.[1] Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).  Plaintiff's date last insured was December 31, 1998. AR 19.  Therefore, to be entitled to benefits, plaintiff must establish he was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

II.     The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not

---

[1] The Social Security Act provides in relevant part that "[e]very individual who . . . is insured for disability insurance benefits," who "has filed [an] application for disability insurance benefits" and "who is under a disability. . . , shall be entitled to" such benefits. 42 U.S.C. § 423(a).  Thus, an individual's "insured status is a basic factor in determining if" the individual is "entitled to . . . disability insurance benefits or to a period of disability." 20 C.F.R. § 404.101(a).  If an individual is "neither fully nor currently insured, no benefits are payable." Id.

ORDER - 3

"significantly limit" a claimant's mental or physical abilities to do basic work activities. 20

C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL

374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs."

20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has

"no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL

56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841

F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their

symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step

two inquiry described above, however, is a *de minimis* screening device used to dispose of

groundless claims. See Smolen, 80 F.3d at 1290.

At step two in this case, the ALJ found that through his date last insured, plaintiff had

severe impairments consisting of a cervical spine disorder, deformity of the fifth finger of the

hand and alcohol abuse. See AR 19.  The ALJ further found in relevant part that:

> The claimant also has multiple non-severe impairments. . . .
>
> The claimant has . . . complained of low back pain.  He testified that he has
> had low back pain off and on since the 1960s, and that it has worsened
> recently.  Records show that he was treated for low back pain in June and July
> 1993, but in May 1993 he did not have any symptoms (Ex. 1F, p. 24 and 46
> and Ex. 4F, p. 33).  The medical records do not include any further treatment
> for this impairment prior to his date last insured.  The records do indicate that
> this impairment worsened in 2004, and an MRI in January 2006 showed
> degenerative disc disease with neural foraminal narrowing (Ex. 9F, p. 11 and
> 52).  However, the evidence does not establish that this impairment was
> present at that severity prior to his date last insured, and does not contain
> convincing evidence that his low back pain caused functional limitations
> within the time period at issue.  Therefore, this impairment is not severe.
>
> . . .

ORDER - 4

The claimant's medically determinable mental impairments of dysthymia and posttraumatic stress disorder (PTSD), considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere.  As [sic] assessment performed in May 1993 resulted in diagnoses of PTSD and dysthymia.  He was given a Global Assessment of Functioning (GAF) score of 65, indicative of mild symptoms and generally good functioning[2] (Ex. 4F, p. 39).  Another examination showed the claimant had a sad mood but "OK" orientation, fund of knowledge, and memory and fair concentration and judgment.  He was diagnosed with PTSD and assigned a GAF score of 60[3] (Ex. 4F, p. 80-81).  Later assessments found more severe symptoms, and in July 2004 the claimant was given a GAF score of 30[4] (Ex. 9F, p. 55-61).  The claimant was also diagnosed with PTSD in February 2000, and assigned a GAF [score] of 35 (Ex. 9F, p. 69).  However, those evaluations occurred after the claimant's date last insured, and the medical records do not show that his mental health disorders had reached this level of severity during the time period in question.  Therefore, the claimant's mental health impairments are found to be not severe.

AR 20-21.

In arguing the ALJ erred in finding his PTSD was not a severe impairment prior to his date last insured, plaintiff points to his own testimony and self reports concerning his symptoms and limitations.  See ECF #12, pp. 5 (citing AR 40, 48, 388).  At step two of the disability evaluation process, however, although the ALJ must take into account a claimant's pain and other symptoms (see 20 C.F.R. § 404.1529), the severity determination is made solely on the

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  As noted by the ALJ, "[a] GAF score of 61-70 reflects mild symptoms or "some difficulty [in social, occupational, or school functioning], but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 1994) ("DSM-IV") at 30).

[3] "A  GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) at 34).

[4] "'A GAF of 21 to 30 indicates the individual's '[b]ehavior is considerably influenced by delusions or hallucinations" or the individual has a "serious impairment in communication or judgment . . . or [an] inability to function in almost all areas.'" Pate-Fires v. Astrue, 564 F.3d 935, 940 (8th Cir. 2009) (quoting DSM-IV at 32).

ORDER - 5

basis of the objective medical evidence in the record:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.*

SSR 85-28, 1985 WL 56856 *4 (emphasis added).  Plaintiff has not pointed to any objective medical evidence in the record to support a finding of severity prior to or as of his date last insured.  Indeed, as the ALJ notes, the objective medical evidence in the record relating to that time period overwhelmingly demonstrates otherwise, or at the very least fails to show plaintiff had work-related limitations that caused more than minimal interference in his ability to perform basic work activities.  See AR 210-12, 216, 218-19, 228, 230-33, 244, 255-56, 345, 349, 388-94.  As discussed in greater detail below, furthermore, the ALJ did not err in discounting plaintiff's credibility.  Accordingly, the Court finds no error in the ALJ determining plaintiff's PTSD to be non-severe here.[5]

As for plaintiff's bowel urgency, there does not appear to be any objective evidence of

---

[5] As noted above, plaintiff was assessed with a GAF score of 60 prior to his date last insured, which is indicative of moderate symptoms or moderate difficulty in social or occupational functioning.  Also as noted above, however, the GAF score is a *subjective* determination of an individual's ability to function, rather than objective evidence of such ability.  In addition, the same progress note where that GAF score was noted, plaintiff was also found to have PTSD with "some mild depression," in regard to which plaintiff found psychotropic medication to be "helpful", resulting in decreased irritability and overall improvement. AR 391, 393.  Given the GAF score of 65 assessed just one month prior thereto indicating at most mild symptoms (see AR 349), and the overall lack of objective medical evidence of any actual work-related functional limitations stemming from plaintiff's mental health impairments prior to or as of his date last insured, the Court finds the ALJ did not err in finding as she did here. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility and resolving ambiguities and conflicts in medical evidence); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (where medical evidence in record is not conclusive, "questions of credibility and resolution of conflicts" are solely functions of ALJ).  Nor has plaintiff argued the ALJ erred on this basis. See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

ORDER - 6

1   such an impairment in the record prior to or as of his date last insured, let alone evidence of

2   actual work-related limitations stemming therefrom.  Even plaintiff's own self-report of having

3   bowel urgency problems does not appear in the medical records until early November 2004.  <u>See</u>

4   AR 482-83.  Here too, therefore, the ALJ was not remiss in failing to find the existence of a

5   severe impairment.  The same is true concerning the presence of a severe lumbar degenerative

6   disc disease impairment.  Indeed, as plaintiff himself notes, the first objective medical evidence

7   of such degenerative changes does not appear in the record until several years after his date last

8   insured.  <u>See</u> AR 465-67 (noting x-ray findings from early September 2005).

9

10  III.     <u>The ALJ's Determination at Step Three</u>

11          At step three of the sequential disability evaluation process, the ALJ must evaluate the

12  claimant's impairments to see if they meet or medically equal any of the impairments listed in 20

13  C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  <u>See</u> 20 C.F.R § 416.920(d); <u>Tackett v.</u>

14  <u>Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or

15  medically equal a listed impairment, he or she is deemed disabled. <u>Id.</u>  The burden of proof is on

16  the claimant to establish he or she meets or equals any of the impairments in the Listings. <u>See</u>

17  <u>Tacket</u>, 180 F.3d at 1098.  "A generalized assertion of functional problems," however, "is not

18  enough to establish disability at step three." <u>Id.</u> at 1100 (citing 20 C.F.R. § 404.1526).

19          A mental or physical impairment "must result from anatomical, physiological, or

20  psychological abnormalities which can be shown by medically acceptable clinical and laboratory

21  diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908.  It must be established by medical

22  evidence "consisting of signs, symptoms, and laboratory findings." <u>Id.</u>; <u>see also</u> SSR 96-8p, 1996

23  WL 374184 *2 (determination that is conducted at step three must be made on basis of medical

24  factors alone).  An impairment meets a listed impairment "only when it manifests the specific

ORDER - 7

findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original).  However, "symptoms alone" will not justify a finding of equivalence. Id.  The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).  This is particularly true where the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

The ALJ at step three in this case found in relevant part as follows:

**. . . Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically**

ORDER - 8

**equaled one of the listed impairments . . .**

The claimant's cervical spine disorder does not meet the requirements of section 1.04 of the Listing of Impairments. The claimant's condition does not include the required compromise of a nerve root or spinal cord, and does not feature evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis, as required in [L]isting 1.04.

The claimant's finger fracture and deformity is not an impairment specifically covered within the Listing of Impairments. When this problem is considered in combination with his other impairments, their severity does not medically equal any listed impairment.

AR 22 (emphasis in original). Plaintiff argues the ALJ should have found his PTSD met or medically equaled the criteria set forth in Listing 12.06 (anxiety-related disorders). The Court disagrees.

Listing 12.06 provides in relevant part that:

The required level of severity for these disorders is met when the requirements in both A and B are satisfied . . . .

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or

b. Autonomic hyperactivity; or

c. Apprehensive expectation; or

d. Vigilance and scanning;

or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

ORDER - 9

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. Plaintiff once more points to his own testimony and self-reports to argue he has marked limitations in the areas of activities of daily living and social functioning. See ECF #12, p. 6 (citing AR 48, 50-51, 388). As noted above, however, at step three of the sequential evaluation process, a generalized assertion of functional problems is not enough to establish listing-level severity, but rather it must be established by objective medical evidence alone. See Tacket, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1526); see also SSR 96-8p, 1996 WL 374184 *2. In addition, "symptoms alone" will not justify a finding of medical equivalence (Sullivan, 493 U.S. at 531), and, in any event again as discussed in greater detail below, the ALJ did not err in discounting plaintiff's credibility. The objective evidence that is in the record concerning the relevant time period in this case, furthermore, fails to show the requisite level of severity in any of the above functional areas. See AR 210-12, 216, 218-19, 228, 230-33, 244, 255-56, 345, 349, 388-94.

IV.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

ORDER - 10

642.  The Court should not "second-guess" this credibility determination. <u>Allen</u>, 749 F.2d at 580.

In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence. <u>See id.</u> at 579.  That some of the reasons for

discrediting a claimant's testimony should properly be discounted does not render the ALJ's

determination invalid, as long as that determination is supported by substantial evidence.

<u>Tonapetyan</u> , 242 F.3d at 1148.

      To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." <u>Lester</u>, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>see also</u>

<u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

and convincing." <u>Lester</u>, 81 F.2d at 834.  The evidence as a whole must support a finding of

malingering. <u>See</u> <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

      In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." <u>Smolen</u>, 80 F.3d at 1284.  The

ALJ also may consider a claimant's work record and observations of physicians and other third

parties regarding the nature, onset, duration, and frequency of symptoms. <u>See</u> <u>id.</u>

      Here, the ALJ discounted plaintiff's credibility concerning his subjective complaints for a

number of reasons, including a lack of objective medical support therefor in the record. <u>See</u> AR

23-24; <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination

that claimant's subjective complaints are "inconsistent with clinical observations" can satisfy

clear and convincing requirement).  The ALJ also noted the record showed "only conservative

ORDER - 11

treatment" for plaintiff's impairments. See AR 23; Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation).

The ALJ, furthermore, noted that while plaintiff has alleged "his job ended due to his impairments," he "testified that he was laid off, and noted that his drinking also played a role in his inability to perform the work." AR 23-24; see Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in part due to fact that he left his job for reasons other than his alleged impairment); Smolen, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements concerning symptoms).  Accordingly, the Court rejects plaintiff's claim that the ALJ gave no indication and provided no analysis or specific reasons as to why she found him to be not fully credible.

V.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability

to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ

must consider only those limitations and restrictions "attributable to medically determinable

impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ found in this case that through his date last insured, plaintiff had the residual

functional capacity to perform the full range of medium work. See AR 22.  Plaintiff argues the

ALJ erred in so finding, because she failed to fully consider his PTSD, bowel urgency and

lumbar degenerative disc disease.  As discussed above, however, the ALJ properly found none of

those impairments to be severe, as the record failed to establish they resulted in significant work-

related limitations prior to or as of plaintiff's date last insured.  Also as discussed above, the ALJ

did not err in discounting plaintiff's credibility concerning his subjective complaints.  The ALJ

thus was not required to include any additional limitations stemming from the above alleged

impairments in his assessment of plaintiff's RFC.

Plaintiff argues as well that because psychological testing conducted in late May 1993,

indicated he had "much below average cognitive abilities," the ALJ should have limited him "to

only performing simple and repetitive tasks which can be learned on the job in a short period of

time." AR 255; ECF #12, p. 7.  But the fact that testing may have revealed a cognitive deficit at

the time, says nothing about what, if any, work-related limitations that deficit might produce.

Indeed, the psychologist who conducted the testing noted plaintiff's "performance on reasoning

& problem solving skills was better than expected." AR 255.  The only potential problems that

medical source expressly stated plaintiff might have, furthermore, would be probable "difficulty

expressing thoughts and feelings accurately." Id.  Again, though, no opinion was given as to how

ORDER - 13

1    this might impact plaintiff's actual ability to do specific work tasks, if at all.

2    VI.    The ALJ's Step Four Determination

3            At step four of the sequential disability evaluation process, the ALJ found plaintiff's RFC

4    did not preclude him from performing his past relevant work as a janitor and bail bond enforcer.

5    See AR 24.  The claimant has the burden at step four to show that he or she is unable to return to

6    his or her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  Plaintiff

7    argues the ALJ's step four determination "lacks rational support when the record is considered as

8    a whole," but fails to state with any specificity how this is so. ECF #12, p. 9; see Carmickle, 533

9    F.3d at 1161 n.2; Kim, 154 F.3d at 1000.  To the extent plaintiff is basing his argument on the

10   alleged errors the ALJ committed in evaluating his PTSD, bowel urgency and degenerative disc

11   disease in his lumbar spine and in assessing his credibility, once more as discussed above there

12   were no such errors.

13          Plaintiff goes on to argue that the ALJ erred in not discussing or giving any rationale for

14   why she did not rely on the vocational expert's testimony that an individual who was likely to be

15   absent or tardy from work three to five times per month, would not be able to perform either his

16   past work or any other competitive work in the national economy. See AR 57-58.  But to rely on

17   the testimony of a vocational expert, it must be reliable in light of the objective medical evidence

18   in the record and thus qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422

19   (9th Cir. 1988).  Further, an ALJ's findings based on the testimony of the vocational expert, will

20   be upheld only if the weight of the medical evidence supports the hypothetical posed by the ALJ.

21   See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450,

22   1456 (9th Cir. 1984).

23          There is no objective medical evidence in the record to indicate plaintiff would be unable

ORDER - 14

to attend work on a regular basis during the relevant time period.  Accordingly, the ALJ was not required to adopt the vocational expert's testimony in this case, and the Court thus finds no error in his failure to specifically address it. See Embrey, 849 F.2d at 422 (description of claimant's limitations "must be accurate, detailed, and supported by the medical record"); see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ may omit from description of claimant's limitations those he or she finds do not exist).  Plaintiff, therefore, has failed to demonstrate he is unable to perform his past relevant work or other competitive work on this basis.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 6th day of September, 2012.


Karen L. Strombom
United States Magistrate Judge

ORDER - 15